UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VILYAM ABELYAN,

                  Petitioner,

      v.

PAMELA BONDI, *et al.*,

                  Respondents.

Case No. 5:26-cv-00562-FLA (DSR)

**ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 2]**

1

## **<u>RULING</u>**

On February 7, 2026, Petitioner Vilyam Abelyan ("Petitioner") filed a Petition for Writ of *Habeas Corpus* ("Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention as a violation of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and applicable regulations.  Dkt. 1 ("Pet.").[1]

That same day, Petitioner filed the subject Motion for Temporary Restraining Order ("Motion"), requesting the court "order[] his immediate release on an Order of Supervision ['OSUP'], and enjoin[] Respondents from re-detaining him until they have obtained travel documents, can demonstrate that his removal is reasonably foreseeable in a hearing before a neutral adjudicator, and have followed the proper regulatory procedures for revocation of his release."  Dkt. 2 ("Mot.") at 2. Respondents oppose the Motion.  Dkt. 7 ("Opp'n").  The court finds this matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the Motion is DENIED.

## **<u>BACKGROUND</u>**

Petitioner is a citizen of the former Soviet Union who was born in what is now the Republic of Armenia ("Armenia").  Dkt. 1-1 ("Abelyan Decl.") ¶ 1; Dkt. 7-1 ("Langill Decl.") ¶ 4.[2]  The parties dispute whether Petitioner is a citizen of Armenia or stateless.  *Compare* Opp'n at 6 *with* Abelyan Decl. ¶ 4.  Petitioner was paroled into the United States on April 18, 1990, and became a lawful permanent resident on or

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

[2] Deportation Officer Cane Langill ("Langill") attests the facts in his declaration are based on his "consultation with other [U.S. Immigration and Customs Enforcement ('ICE')] personnel, and review of official documents and records maintained by [the U.S. Department of Homeland Security ('DHS')] …."  Langill Decl. ¶ 2.

about November 13, 1991.  Langill Decl. ¶¶ 5–6.

On October 14, 2009, Petitioner was convicted of grand theft of personal property in criminal proceedings before the Los Angeles County Superior Court, and imprisoned for 2 years and 8 months.  *Id.* ¶ 7.  On March 1, 2012, an Immigration Judge ordered Petitioner removed to Armenia, based on his 2009 criminal conviction.  *Id.* ¶ 9; Dkt. 1-2.  On April 4, 2012, Petitioner appealed the removal decision to the Board of Immigration Appeals, which was dismissed on July 26, 2012.  Langill Decl. ¶¶ 10–11; Dkt. 1-2.  On September 21, 2012, ICE Enforcement Removal Operations ("ERO") served Petitioner with an OSUP and released him from immigration detention.  Langill Decl. ¶ 12.

On February 4, 2013, ERO detained Petitioner for violating the terms of his probation, and released him later that day with a reissued OSUP.  Langill Decl. ¶ 13.  Petitioner was subsequently convicted of additional unspecified criminal offenses in criminal proceedings before California state courts and served an unspecified length of imprisonment, referred to ICE custody upon his release from prison on March 19, 2019, and released with a reissued OSUP that same day.  *Id.* ¶ 14; Abelyan Decl. ¶ 2.

On December 19, 2025, ERO arrested Petitioner when he appeared for a check-in appointment at ICE's Los Angeles Intensive Supervision Appearance Program office, revoked his release, and took him into custody.  Langill Decl. ¶¶ 16, 18; Abelyan Decl. ¶ 3.  The parties dispute whether Petitioner was served with a Notice of Revocation of Release ("Notice of Revocation," Dkt. 7-2).  Langill Decl. ¶ 17; Abelyan Decl. ¶ 6.  On January 8 and 16, 2026, ERO officers interviewed Petitioner and requested he sign applications for travel documents to effectuate his removal to Armenia.  Langill Decl. ¶¶ 19–20; Abelyan Decl. ¶ 5.  According to Petitioner, he told the officers he "didn't want to sign anything without a lawyer to review the paperwork with [him] and advise [him] on it."  Abelyan Decl. ¶ 5.  ICE sent a request for travel documents to the Consulate General of Armenia on January 23, 2026, which remained pending as of February 27, 2026.  Langill Decl. ¶ 21.

**DISCUSSION**

I.      **Legal Standard**

      A.      **Temporary Restraining Orders and Preliminary Injunctions**

"[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). "The status quo is the last uncontested status which preceded the pending controversy." *Id.* at 809 (citation and quotation marks omitted).

A plaintiff seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is "one as to which the moving party has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (quotation marks and citation omitted).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs establish that irreparable harm is likely." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up). The first factor, "likelihood of success on the merits[,] is the most import factor—and even more so when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024). "If a movant makes a sufficient demonstration on all four *Winter* factors …, a court must not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue." *Baird v. Bonta*, 81 F.4th 1036,

4

1041 (9th Cir. 2023) (cleaned up).

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *Rasul v. Bush*, 542 U.S. 466, 474 (2004).  The petitioner "bears the burden of demonstrating that he is in custody in violation of the Constitution or laws or treaties of the United States."  *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1159 (S.D. Cal. Oct. 1, 2025) (cleaned up).

### B.   Detention and Removal of Aliens under the INA

8 U.S.C. § 1231(a) ("§ 1231(a)") governs the "[d]etention, release, and removal of aliens ordered removed," and states in relevant part:

**(1) Removal period**

**(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B) Beginning of period**

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C) Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

**(2) Detention**

**(A) In general**

During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under [8 U.S.C. § 1182(a)(2) or (a)(3)(B)] or deportable under [8 U.S.C. § 1227(a)(2) or (a)(4)(B)].  …

**(3) Supervision after 90-day period**

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.  …

**(6) Inadmissible or criminal aliens**

An alien ordered removed who is inadmissible under [§ 1182], removable under [§ 1227(a)(1)(C), (a)(2), or (a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(1), (2)(A), (3), (6).

8 C.F.R. § 241.4 ("§ 241.4") governs the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period."  8 C.F.R. § 241.13 ("§ 241.13") "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."  *Id.* § 241.13(a).  Pursuant to § 241.13(i)(2), "[t]he

6

Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[3]

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release.  The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.  The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.  The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).  "Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph [(i)(3)] of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal." *Id.* § 241.13(i)(2).[4]

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court held the government may detain a removable alien for up to six months reasonably and

---

[3] 8 U.S.C. § 1101(a)(34), defines "[t]he term 'Service' [to] mean[] the [former] Immigration and Naturalization Service of the Department of Justice," which was dissolved on March 1, 2003, under the Homeland Security Act of 2002, and replaced by the U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and ICE.  6 U.S.C. §§ 251, 271(b), 291.  Pursuant to 8 C.F.R. § 1.2, "Service" means USCIS, CBP, and/or ICE "as appropriate in the context in which the term appears."

[4] Section 241.13(i)(2), on its face, references "the informal interview provided for in paragraph (h)(3) of this section."  However, this appears to be a typographical error, since the procedures for an informal interview are set forth in paragraph (i)(3), while paragraph (h)(3) concerns the unrelated subject of employment authorization for aliens released under an OSUP.

constitutionally, while working to effectuate his or her removal.[5]  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing."  *Id.*  The alien must be released if a court determines "there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*[6]

## II.    Analysis

Petitioner contends he is likely to succeed on the merits of his Petition because Respondents failed to follow the proper procedures for revoking his release.  Dkt. 2-1 ("Mot. Mem.") at 8.  Respondents counter Petitioner's arrest and re-detention were proper because he was given notice he was arrested and detained pursuant to § 241.13 while the government effected his removal to Armenia.  Opp'n at 6–7.  Petitioner raises three primary arguments in support of the Motion, which the court will address in turn.

First, Petitioner contends he is likely to prevail on his due process claim because he was not provided with meaningful notice of the reasons for the revocation of his release or an opportunity to be heard before he was re-detained.  Mot. Mem. at 9–14.  Section 241.13(i)(3) states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release."  8 C.F.R. § 241.13(i)(3).  This regulation, on its face, does not require pre-detention notice or opportunity to be heard, as Petitioner contends, and only requires notice and the provision of an informal interview after the alien is detained.  While Petitioner argues that ICE's failure to

---

[5] Since the indefinite detention of aliens subject to final orders of removal "would raise serious constitutional concerns," the Supreme Court construed § 1231 "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."  *Zadvydas*, 533 U.S. at 682.

[6] "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.*

provide him with meaningful prior notice infringed his due process interest in his continued liberty, Mot. Mem. at 13, the Supreme Court recognized in *Zadvydas*, 533 U.S. at 701, that the government may detain a removable alien for a limited, reasonable period while the government works to effectuate his or her removal. Petitioner, thus, fails to establish a likelihood of success on the merits on this basis.

Second, Petitioner argues he was never provided with written notice of the reasons for the revocation of his release, an informational interview, or any opportunity to present evidence or arguments on his behalf.  Mot. Mem. at 9–14 (citing Abelyan Decl. generally).  Petitioner, however, admits in his declaration that he was interviewed by ICE officers on two occasions since he was detained, Abelyan Decl. ¶ 5, which directly contradicts his contention that he was not provided an informational interview or opportunity to be heard.

Respondents submit a copy of the Notice of Revocation (Dkt. 7-2),[7] dated December 19, 2025, which Langill attests ICE provided to Petitioner when he was arrested and re-detained that day.  Langill Decl. ¶ 17.  Petitioner does not present any evidence on reply to dispute or contradict Langill's testimony, and argues instead that "[t]he Notice of Revocation … has no certificate of service on it, and thus, there is no evidence it was ever served on Petitioner."  Dkt. 8 ("Reply") at 6.  Petitioner,

---

[7] Petitioner contends the Notice of Revocation was legally deficient because it was signed by a Supervisory Detention and Deportation Officer ("SDDO"), who lacked authority to revoke Petitioner's release.  Mot. Mem. at 14–15.  Section 241.13(i)(2) states "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  Petitioner does not cite any legal authority to establish: (1) the notice required by § 241.13(i)(3) must identify and be signed by the specific official who determined there was a significant likelihood that the alien could be removed in the reasonable future, or (2) an SDDO cannot make such determination lawfully.  *See* Mot. Mem. at 14–15 (citing cases discussing which officials are authorized to revoke release under § 241.4(*l*)(2)).  Petitioner, thus, fails to establish a reasonable likelihood of success on this basis.

however, does not cite any legal authority to establish the government is required to attach a certificate of service to a Notice of Removal. On the record presented, the court finds Petitioner's assertions that he was never provided with a copy of the Notice of Revocation or an informal interview are insufficient to establish a likelihood of success on the merits of his claims.

Third, Petitioner argues Respondents have not established the existence of changed circumstances or that removal is likely to occur in the reasonably foreseeable future. Mot. Mem. at 9–10. Respondents counter the United States' relationship with Armenia has changed since 2012, when Petitioner was initially released, and that Armenia now accepts individuals such as Petitioner. Opp'n at 9–11. According to Respondents, Armenia recently accepted a similarly situated alien who raised the same argument unsuccessfully in *Ovsepian v. Bondi*, Case No. 5:25-cv-01937-MEMF (DFM) (C.D. Cal.). Langill attests "a travel document request was sent to the Consulate General of Armenia located in Los Angeles, CA," and that the request remained pending as of February 27, 2026. Langill Decl. ¶¶ 21–22. On the subject Motion, this evidence is sufficient to establish the existence of materially changed circumstances under § 241.13(i)(2), and to demonstrate that Petitioner is likely to be removed in the reasonably foreseeable future.[8]

///

---

[8] Petitioner argues "it is the burden of Respondents to establish that a travel document was obtained or even requested *prior to* Petitioner's re-detention and a purported statement that the travel document is under review in a Notice of Revocation is insufficient to meet the burden." Mot. Br. at 10 (emphasis in original). In *Jama v. ICE*, 543 U.S. 335, 344–45 (2005), the Supreme Court held the government can lawfully attempt to remove an alien to the country of his birth without that country's advance consent. As the Court explained, "[e]ven without advance *consultation*, a country with a functioning government may well accept a removed alien when he is presented at the border or a port of entry; the absence of advance *consent* is hardly synonymous with impracticability or impossibility." *Id.* at 345 (italics in original). The court, therefore, finds Respondents were not required to request or obtain travel documents prior to Petitioner's arrest and re-detention.

Petitioner, thus, fails to meet his initial burden to establish a reasonable likelihood of success on the merits of his claims or to demonstrate he is entitled to a temporary restraining order for his immediate release.  Having found Petitioner fails to establish the first *Winter* factor, the court need not address the remaining factors. *See Matsumoto*, 122 F.4th at 804.

**CONCLUSION**

For the reasons stated, the Motion is DENIED.


IT IS SO ORDERED.


Dated: May 20, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

11